1  **LAWRENCE BRAGMAN, SB #104039**
   **Attorney at Law**
2  **912 Lootens Place, 2nd Floor**
   **San Rafael, CA 94901-3110**
3  **Telephone: (415) 459-6060**
   **Facsimile: (415) 459-6067**
4
   **Attorney for Plaintiff ANGELINA PAPIA**
5

6

7

8

9
                    **UNITED STATES DISTRICT COURT**
10
                    **NORTHERN DISTRICT OF CALIFORNIA**
11

12 **ANGELINA PAPIA,**                    )   **CASE NO.  3:24-cv-06769-JCS**
                                          )
13         **Plaintiff,**                 )   **SECOND AMENDED COMPLAINT FOR**
                                          )   **DAMAGES FOR VIOLATION OF CIVIL**
14 **v.**                                 )   **RIGHTS AND WRONGFUL DEATH**
                                          )
15                                        )
   **COUNTY OF MARIN, MARIN**             )
16 **COUNTY SHERIFF'S OFFICE,**           )   **(a)    JURY TRIAL DEMANDED**
   **SHERIFF JAMIE SCARDINA,**            )
17 **COUNTY OF MARIN DEPARTMENT**         )   1.  42 U.S.C. §1983 – Municipal Liability-
   **OF HEALTH AND HUMAN**               )       Failure to Protect from Harm
18 **SERVICES, ANTHONY BAYLACQ**          )   2.  42 U.S.C. §1983 – Municipal Liability-
   **and DOES 1 – 200, jointly and**      )       Deliberate Indifference to Serious
19 **severally,**                         )       Medical and Mental Health Need
                                          )   3.  42 U.S.C. §1983 – Municipal Liability-
20                                        )       Unconstitutional Policies, Practices
           **Defendants.**               )   4.  42 U.S.C. §1983 – Municipal Liability-
21                                        )       Supervisory Liability
                                          )   5.  42 U.S.C. §1983 – Municipal Liability-
22                                        )       Interference with Familial Association
                                          )       Negligence
23                                        )   6.  California Civil Rights Violation under
                                          )       Civil Code §52.1
24                                        )   7.  Wrongful Death
                                          )
25

26
   _____
27
               COMES NOW Plaintiff ANGELINA PAPIA and alleges as follows:
28

   _____

# I.  INTRODUCTION

1.    On October 1, 2023. DYLAN BAYLACQ, 21 years of age, took his own life by hanging himself while in custody at the Marin County Jail, in San Rafael, California. This civil rights action is brought by ANGELINA PAPIA, the mother of DYLAN BAYLACQ (hereinafter "DYLAN BAYLACQ", 'DYLAN", or Decedent").

2.    Suicide is the leading cause of death in American Jails. Suicide rates in local jails and correctional facilities have long been known to far exceed suicide rates among the general population. In 2022, the rate of suicide for the general population of the United States was 14.2 per 100,000 persons per year. The rate of suicide for inmates at local jails and correctional facilities is 49 per 100,000 (E. Carson, 2021 Mortality in Local Jails, 2000-2019–Statistical Tables, Washington D.C., U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics) or over three times the rate of the general population. The rate of hanging suicides alone at the Marin County Jail from 2013 through 2023 is conservatively estimated to be 130 suicides per 100,000, or more than two and one-half times the national rate of jail suicides.[1]

3.    The Marin County Jail was completed in 1994. The jail is embedded in a knoll adjacent to the north wing of the Marin County Civic Center and Courthouse. The incarcerated population, detainees, and staff all suffer from a lack of natural light and fresh air in the bunker-like setting. Its underground location has produced a nearly windowless facility with a severe lack of space.

4.    The Marin County Jail is owned and operated by Defendant COUNTY OF MARIN. The Marin County Jail is, and all time herein was, classified as a Type II  facility by the California Board of State and Community Detention Facilities. A Type II facility means a local detention facility used for the detention of persons pending arraignment, during trial and upon a sentence of commitment.

5.    At all times herein, the Marin County Jail was staffed by employees of the COUNTY OF MARIN under the command supervision Defendant MARIN COUNTY SHERIFF JAMIE SCARDINA.  As set forth in more factual detail hereinbelow, DYLAN's death was caused by the

---

[1] This estimate is based upon the jail's 2018 average daily population of 320. As of 9/24/24 it was 220.

Defendants' longstanding and pervasive mental health and custodial customs, practices and policies of deliberate indifference in failing to protect inmates at the Marin County Jail. Such customs, practices and policies including: improper classification of inmates suffering from acute mental illness, failure to conduct safety checks on such inmates at reasonable intervals, and failure to provide mental health care to inmates.

6.     DYLAN's death was also caused by the Defendants' longstanding, persistent and pervasive customs, practices and policies of deliberate indifference to placing incarcerated individuals in cells which have known, patently dangerous and defective ligature tie-off points which placed them at a substantial risk of suffering serious bodily injury or death; their persistent custom, practice and policy of failing to take reasonable actions to investigate these conditions which existed in every cell at the Marin County Jail for many years; indiscriminately providing ligature materials to special management inmates who are confined to these cells despite the self-evident risk in doing so; and, for failing to take reasonable available measures to repair, correct or abate these risks, even though reasonable correctional officials in these circumstances would have appreciated the high degree of risk to inmates confined under these conditions.

7.     As set forth below, the Defendants' policies, customs and practices violated Plaintiff's fundamental rights under 42 U.S.C. section 1983 and the United States Constitution and were a substantial factor in causing DYLAN BAYLACQ'S untimely death.

## II. JURISDICTIONAL AND DIVISION ASSIGNMENT

8.     This action is brought for redress of the alleged deprivations of Constitutional rights pursuant to 42 U.S.C. §§1983 and 1988 and the Fourteenth Amendment of the United States Constitution. Jurisdiction is founded under 28 U.S.C. §§1331, 1343 and 1367 and Article I, §13 of the California Constitution, and the laws of the State of California.

9.     Venue is proper in this Court under 28 U.S.C. §1391(b), because all incidents, events and occurrences giving rise to this action occurred in the County of Marin, California. Hence, venue for this action lies in the United States District Court for the Northern District of California.

## III. PENDANT CLAIMS

10.     With respect to Plaintiff's supplemental claims, Plaintiff requests that the Court

exercise supplemental jurisdiction over such claims as they arise from the same facts and circumstances which underlie the federal claims. Plaintiff has complied with the California Tort Claims Act requirements. With respect to these supplemental claims, Plaintiff requests that this Court exercise supplemental jurisdiction over such claims as they also arise from the same facts and circumstances which underlie the federal claims.

## IV.  PARTIES

11.    Plaintiff, ANGELINA PAPIA (hereinafter "Plaintiff" or "ANGELINA PAPIA" or "PAPIA"), is DYLAN BAYLACQ's mother. At all times relevant hereto, ANGELINA PAPIA was a resident of the County of Marin, California. On March 29, 2024, PAPIA filed a claim against Defendant COUNTY OF MARIN (hereinafter "COUNTY OF MARIN" or "COUNTY"), the Marin County Sheriff, and the Marin County Department of Health and Human Services pursuant to Government Code §910 et. seq. On or about May 3, 2024, the County of Marin mailed a Notice of Rejection of Claim pursuant to Government Code §913. On September 9, 2024, Plaintiff filed an Amended Claim against the County of Marin, Marin County Sheriff's Office and the County of Marin Department of Health and Human Services. On October 2, 2024, the County of Marin Mailed a Notice of Rejection of Claim as to the Amended Claim. Plaintiff PAPIA has standing to pursue a wrongful death claim pursuant to California Code of Civil Procedure §377.60. Decedent's father, Anthony Baylacq. (hereinafter "ANTHONY BAYLACQ") is named as a Defendant pursuant to California Code of Civil Procedure §382.

12.    The COUNTY OF MARIN is and was, at all relevant times hereto, a public entity, duly organized and existing under and by virtue of the laws of the State of California, with the capacity to sue and be sued. Defendant MARIN COUNTY is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents, employees and agencies.

13.    Defendant MARIN COUNTY owns, operates, manages, directs and controls Defendant MARIN COUNTY SHERIFF'S OFFICE (hereinafter "MCSO"). MCSO is also a separate public entity, which employs Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY OF MARIN was responsible for assuring the actions, omissions, policies, procedures, practices and customs of its agents, employees and servants,

including MCSO employees, complied with the laws and Constitutions of the United States and the State of California. Defendant COUNTY, through MCSO, is, and at all times herein was responsible for protecting the safety of all persons incarcerated at the Marin County Jail including providing them appropriate and safe housing, furnishings and facilities and additionally for safe and effective custody services, supervision and care including but not limited to medical and mental health treatment.

14.    At all times relevant herein, Defendant JAMIE SCARDINA (hereinafter "SCARDINA" or "SHERIFF SCARDINA" or the "SHERIFF") was the Sheriff of the COUNTY OF MARIN and was acting in such capacity at the time of DYLAN BAYLACQ's death on October 1, 2023. SHERIFF SCARDINA has been employed by the Marin County Sheriff's Office since 2000. In 2018, SCARDINA was appointed as Undersheriff. On or about July, 2022, SCARDINA was appointed as Marin County Sheriff.  At all times herein, Defendant SCARDINA was employed by Defendant COUNTY and/or MCSO, and was the highest-ranking official of the MCSO. As sheriff, SCARDINA has direct command responsibility for the customs, practices, policies, management, supervision, safety, maintenance and operation of the Marin County Jail. As Marin County Sheriff, DEFENDANT SCARDINA received and personally reviewed the below described May 23, 2023 Inspection Report from the Bureau of State and Community Corrections. At all times relevant hereto, Defendant SCARDINA was acting within the course and scope of his employment with Defendants COUNTY and MCSO. At all times herein, Defendant COUNTY owned, operated, managed, directed and controlled the MCSO, which employs SHERIFF SCARDINA and various Doe Defendants employed by the Marin County Sheriff's Office.

15.    Defendant COUNTY also owns, operates, manages, directs and controls Defendant County of Marin Department of Health and Human Services (hereinafter "HHS"). HHS employs other Doe Defendants in this action. At all times relevant herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including HHS employees, complied with the laws, regulations and the Constitutions of the United States and of the State of California. Defendant COUNTY, through HHS and MCSO, is, and at all times herein was, responsible for protecting the health and safety of all persons incarcerated at the Marin County Jail and providing reasonable and adequate medical and mental health care treatment and care.

16.    Plaintiff ANGELINA PAPIA is ignorant of the true names and capacities of Defendants Does 1 to 200, inclusive, and therefore sues those Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each Doe Defendant assigned to work at the MCJ was responsible for carrying out COUNTY, SCARDINA, MCSO and HHS customs, practices and policies to protect the safety of incarcerated individuals at the Marin County Jail. Said Doe Defendants, and each of them, were assigned to work as the custodial and/or mental health and/or medical and/or maintenance staff at the Marin County Jail and were responsible for the safe and proper maintenance, repair, upkeep, design, construction, operation and furnishing of the premises all appurtenances; and for reasonable supervision, observation, medical care, including mental health care, and classification of incarcerated individuals. Said Doe Defendants knew, or should have known, about the persistent unsafe conditions, customs, practices and policies at the jail and failed to take reasonable measures to address these unsafe conditions, customs, practices, policies and procedures set forth below and failed to override them, in effect approving them. Hence, said Doe Defendants are responsible in some manner for the injuries and damages suffered by Plaintiff as set forth herein. Plaintiff prays for leave of court to amend her Complaint to state the true names and capacities of Defendant Does 1 through 200, inclusive, when they have been ascertained.

17.    At all times herein mentioned, each of the Doe Defendants was the agent or employee of Defendants COUNTY, MCSO, SCARDINA and/or HHS, and in doing the things alleged, was acting within the course and scope of such agency or employment, and with the actual or implied permission, consent, authorization, and approval of all other Defendants.

18.    In doing the acts and/or omissions alleged herein, the Defendants, including Does 1 to 200, acted in concert with each of said other Defendants herein.

19.    At all times during the incident, all Defendants acted under color of state law in the course and scope of their duties with the COUNTY, MCSO, SCARDINA and/or HHS.

20.    Defendant SHERIFF SCARDINA's performance and conduct was authorized, encouraged, condoned and ratified by the COUNTY, MCSO and/or HHS. The acts and omissions of all Defendants, as set forth herein, were at all material times pursuant to the persistent and longstanding customs,  practices and policies of the COUNTY, MCSO, SCARDINA and/or HHS at the Marin County Jail. The Defendants' ongoing, longstanding, persistent customs, practices

and policies constitute deliberate indifference to the health and safety of incarcerated persons at the jail including but not limited to failing to use reasonable care in the management, operation, maintenance and repair of the jail facilities; the failure to taken reasonable measure to address the unsafe and dangerous conditions in every cell in the jail, including the cell which housed Decedent at the time of his death; the failure to reasonably investigate and report whether conditions of jail's physical plant were factors in causing inmate deaths at the jail; and, the persistent and longstanding failure to take reasonable, available measures to abate the dangerous conditions involved in previous suicide death events at the jail. Such longstanding and persistent customs, practices and policies constitute deliberate indifference in violation of 14 U.S.C. section 1983. See *Castro V. County of Los Angeles* 833 F.3d 1060 (9th Cir. 2016). Plaintiff prays leave to amend her complaint as further evidence is ascertained related to the death of DYLAN BAYLACQ on October 1, 2023, while he was in custody at the Marin County Jail.

21.    Each of the Defendants caused and is responsible for the unlawful conduct and the resultant death of DYLAN BYLACQ by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so; by authorizing, acquiescing or failing to take action to prevent the unlawful conduct; by promulgating the policies and procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to DYLAN BAYLACQ's rights, failing to protect him from the known lethal defects in jail housing, failure to use reasonable care in the hiring, supervision, management and training of Doe Defendants; to provide adequate custodial care and supervision to inmates; to provide for the safe design, construction, maintenance, provision and repair of the jail' cells, furnishings and housekeeping materials; and to provide adequate mental health and medical services. Said Defendants are sued in their individual and official capacities, and in some manner, each Defendant is responsible for the acts and omissions alleged herein.

22.    This Complaint may be pled in the alternative, pursuant to Rule 8(d) (2) of the Federal Rules of Civil Procedure.

### V. STATEMENT OF FACTS COMMON TO ALL COUNTS

23.    Dylan Baylacq was born on February 2, 2002 to plaintiff ANGELINA PAPIA and ANTHONY BAYLACQ.  Dylan is also survived by his younger brother.

24.    Beginning at age six, DYLAN was observed to demonstrate impulsive and disruptive behavior. As a result, Plaintiff sought guidance from the County of Marin Youth and Family Services. When DYLAN was 15, Angelina again sought mental health guidance and assistance for Dylan from Marin County Mental Health. County health staff charted that Dylan exhibited symptoms of ADHD when he was a young child and that his symptoms had gotten worse.

25.    On December 22, 2022, Dylan, then age 20, was taken into custody at the Marin County Jail.  Jail records document that he was observed by jail staff to have multiple blisters and lesions on his hands from self-harm. DYLAN was unable to state why he did this to himself. On or about December 23, 2022, Dylan signed a Release of Information permitting jail staff to contact his mother, Plaintiff herein. The Release of information was uploaded to his chart at that time and was  available and effective for Defendants' use at all times mentioned herein.

26.    On January 2, 2023, Dylan was placed on a Welfare and Institutions section 5150 involuntary hold by the Marin County Sheriff. Plaintiff PAPIA reported that she was worried about Dylan's increase in self-harm and self-destructive behaviors after Dylan told his mother that he was going to cut a tattoo out of his body. On January 21, 2023, Dylan was booked into the Marin County Jail on charges of arson of an inhabited structure. The probable cause statement indicated that he forced his way into a vacant house and started a fire which endangered the structure. The probable cause statement indicated that Dylan claimed there was a  "ghost" in the house and that "the house needs to burn".

27.    On March 23, 2023 Jail, jail staff noted that several kitchen and pod workers complained he was up all night pacing and mumbling under his breath. His cell mate was moved out because "Baylacq's bizarre behavior bothered/scared his cellmate." He was reclassified to Mental Health Level 4 (highest level) and moved into special (segregated) housing. Under this classification, DYLAN was considered to be a "special management" inmate. Under the Marin County Custody Manual, special management inmates are to receive "safety checks" a *minimum* of once every 60 minutes and *more frequently if necessary*. When he was interviewed by Jail Mental Health Staff on April 4, 2023, it was noted that Dylan informed them that he had been hospitalized for mental illness.

28.    On June 17, 2023 Dylan again taken in protective custody by the Marin County Sheriff pursuant to Welfare and Institutions Code section 5150. He was released after 24 hours and

thereafter transported and booked at the Marin County Jail for an alleged probation violation.  On June 18, 2023, Dylan was interviewed by Jail Mental Health. Jail staff again observed scabbed, round burn sores on Dylan's left inner arm.  When he was asked about them, Dylan admitted that he intentionally burned himself.

29.    Ten days later, on June 28, 2023, Dylan was admitted to Sutter CPMC Bernal Mission Hospital in San Francisco for a drug overdose. CPMC Mental Health staff contacted Plaintiff who reported that Dylan was hospitalized in the past for suicidal ideation, and was on 5150 holds twice for suicidal acts. She reported that he exhibited unusual behaviors in the past year, including walking backwards to touch objects and responding to internal stimuli. Dylan was held at CPMC until July 6, 2023 pursuant to Welfare and Institutions Code section 5250. The discharge note stated Dylan was admitted to the hospital for a drug overdose and suspected suicide attempt and that he was placed on a psychiatric hold for treatment by the psychiatry team. He was prescribed "trazodone and zyprexa for mood stabilization and antipsychotic".

30.    On July 12, Dylan was booked into custody in Marin County Jail. He was subsequently released on an indeterminate date.  Dylan was booked into Marin County Jail again on August 15, 2023 as a result of an assault charge. He was subsequently released on an indeterminate date.

31.    On August 27, 2023, Dylan was again booked at the Marin County Jail on an assault charge. He was classified as a "Mental Health 4", the most acute level. The jail mental health notes stated that he had a history of being "needy, constantly hitting intercom", bizarre behavior, pacing in his cell, talking to himself, not getting along with other incarcerated persons,  yelling profanities at custody, screaming all night, disrupting the pod, oppositional, demanding, hostile. placed on water restriction due to behavior and "lack of impulse control". The note goes on to indicate no history of  "inpatient psych hospitalizations". "No acute mental health concerns..."

32.    In spite of the obvious contradictions between Dylan's observed behavior and the reported lack of psychiatric treatment history, as per their custom and practice, Jail staff did not request Dylan's consent to obtain his medical/mental health records or make any other reasonable efforts to obtain information and records relating to Dylan's previous health care professionals as required under the Marin County Sheriff's Custody Manual 723.3.  Nor did Jail staff contact ANGELINA PAPIA for information despite having a Release of Information that Dylan had previously signed which authorized them to do so.

33.    As a special management Mental Health 4 inmate, Dylan was housed by himself in Cell 17 in the "Special Housing" unit at the Marin County Jail. Decedent was improperly placed alone in a cell designed for two occupants and confined for 23 hours per day with one hour of solitary exercise time per day. Between August 28, 2023 and September 28, 2023, Dylan was not examined by mental health staff and remained classified as a Mental Health 4 special management inmate. In spite of his Mental Health 4 special management classification, jail staff only made safety checks of Dylan the minimum of once every 60 minutes even though the COUNTY'S custody manual states that special management inmates may be checked more frequently if necessary. The defendants also indiscriminately provided him with a nylon mesh laundry bag in spite of his mental health classification and the symptoms he exhibited.

34.    On or after September 13, 2023, DYLAN'S father, ANTHONY BAYLACQ reported to the Marin County Probation Department that he was worried that his son could attempt to kill himself.  On September 28, 2023, DYLAN was "bumped down" from a Mental Health 4 to a Mental Health 3 classification. As a Mental Health 3 inmate, DYLAN remained in Cell 17 in administrative segregation. In spite of the change in his classification, Jail staff failed to conduct safety checks at reasonable and necessary intervals.

35.    On October 1, 2023, two days after being 'bumped down" and two days before he was scheduled to be sentenced,  Dylan was observed on his side on the floor next to the bunks in his cell. After his cell door was unlocked, he was found to be unresponsive and without a pulse. He also had the remnants of the nylon mesh laundry bag issued to him by the Jail around his neck. Decedent bore residual emesis indicating a prolonged process of suffocation.  Subsequent investigation by Sonoma County Coroner and the Novato Police Department concluded that Dylan had hung himself with the jail issued nylon mesh laundry bag looped through a pre-manufactured hole in the upper bunk as a ligature.

36.    As set forth hereinbelow, the Defendants, and each of them, failed to protect DYLAN from the known, open and obvious dangerous conditions in the jail which put him at substantial risk of suffering serious harm. Further, the Defendants failed to take reasonable available measures to abate the risks even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of such inaction obvious.

37.    The COUNTY OF MARIN, SHERIFF SCARDINA and DOE defendants had actual and constructive notice that Special Housing Pod-Cell 17 was unsafe and did not comply with the requirements of Title 24 of the California Code of Regulations which regulates the construction and furnishing of local correction facilities  Special Housing Pod-Cell 17 was furnished with an upper bunk that had pre-existing, manufactured hole(s) in the platform that provided a tie-off point for hanging/strangulation efforts by vulnerable occupants in violation of Title 24. Title 24, section 1231.3.5 which states: "Beds must be elevated off the floor, have a solid bottom, and a sleeping surface of at least 30 inches (762 mm) wide and 76 inches (1930 mm) long. Multiple beds must have a minimum of 21 inches (533 mm) between bed pans. Except in minimum security areas, beds must be securely fastened to the floor or the wall".

38.    Prior to Dylan Baylacq's death, there were multiple prior suicide hangings at the Marin County Jail, and other events, which put defendants on notice of the dangerous conditions at the jail, including the following:

a.    The Marin County Grand Jury report dated June 28, 2024 states that the Grand Jury learned from confidential interviews that there have been in-cell hangings have been occurring since at least 2008. From 2008 until 2013 the COUNTY OF MARIN, SHERIFF SCARDINA, THE MARIN COUNTY SHERIFF'S OFFICE and Does failed to reasonably review, investigate and report these incidents as required under 15 CCR 1046(a) and 15 CCR 1030 and Marin County Custody Manual section 512.5; and thereafter failed to take reasonable available measures to abate, correct or repair the dangerous tie-off conditions in the jail in spite of the obvious risk of death that they presented to incarcerated persons.

b.    On March 1, 2013, inmate Steven Daniel Frazee hung himself "off a shelf" in Cell 10; Thereafter the COUNTY OF MARIN, SHERIFF SCARDINA, THE MARIN COUNTY SHERIFF'S OFFICE and Does failed to reasonably review, investigate and report the incident as required under 15 CCR 1046(a) and 15 CCR 1030 and Marin County Custody Manual section 512.5; and thereafter failed to take reasonable available measures to abate, correct or repair the dangerous tie-off conditions in the jail in spite of the obvious risk of death that they presented to incarcerated persons.

c.    On or about June 21, 2013, inmate Jeffrey Griffen Boyce hung himself through holes in the upper bunk in cell 17, the same cell where Dylan Baylacq subsequently hung himself.

The Sonoma Coroner Report stated that the "...top bunk had a bed sheet tied in a knot hanging from it. The sheet was thread (sic) through a hole in the metal and tied below..." Thereafter the COUNTY OF MARIN, SHERIFF SCARDINA, THE MARIN COUNTY SHERIFF'S OFFICE and Does failed to reasonably review, investigate and report the incident as required under 15 CCR 1046(a) and 15 CCR 1030 and Marin County Custody Manual section 512.5; and thereafter failed to take reasonable available measures to correct, repair or abate the dangerous tie-off conditions in the jail in spite of the obvious risk of death that they presented to incarcerated persons.

d.    On or about February 22, 2022, inmate Julianne Riebeling hung herself from the upper bunk in her cell in a similar fashion. The Sonoma Coroner's report indicates that the bed frame had four holes in it and those holes appeared to be manufactured into the bed frame. Two bed sheets were hanging from the bottom side of the top bunk directly below the holes and the loose ends were tied with a knot on the top side of the top bunk. Thereafter the COUNTY OF MARIN, SHERIFF SCARDINA, THE MARIN COUNTY SHERIFF'S OFFICE and Does failed to reasonably review, investigate and report the incident as required under 15 CCR 1046(a) and 15 CCR 1030 and Marin County Custody Manual section 512.5; and thereafter failed to take reasonable available measures to repair, correct or abate the dangerous tie-off conditions in the jail in spite of the obvious risk of death that they presented to incarcerated persons.

e.    On or about May 23, 2023, the Bureau of State and Community Corrections directly notified the COUNTY OF MARIN, SHERIFF SCARDINA and the MARIN COUNTY SHERIFF'S OFFICE that Marin County Jail contained "ligature point hazards in each cell..." Hence, Sheriff Scardina had personal knowledge of this notification. Thereafter SHERIFF SCARDINA, THE MARIN COUNTY SHERIFF'S OFFICE, the COUNTY OF MARIN,  and Does failed to reasonably review, investigate and report the conditions as required under 15 CCR 1046(a) and 15 CCR 1030 and Marin County Custody Manual section 512.5; and thereafter failed to take reasonable available measures to abate, correct or repair the dangerous tie-off conditions in the jail in spite of the obvious risk of death that they presented to incarcerated persons.

f.    On or about August 14, 2023, Inmate Carlos Alejandro Chi Chi hung himself. The Sonoma Coroner's report states that "the end of the bed sheet that was opposite of decedent's neck was tied to the top of the bunk..." Thereafter the COUNTY OF MARIN, SHERIFF

SCARDINA, THE MARIN COUNTY SHERIFF'S OFFICE and Does failed to reasonably review, investigate and report the incident as required under 15 CCR 1046(a) and 15 CCR 1030 and Marin County Custody Manual section 512.5; and thereafter failed to take reasonable available measures to repair, correct or abate the dangerous tie-off conditions in the jail in spite of the obvious risk of death that they presented to incarcerated persons.

g.    On October 1, 2023, DYLAN BAYLACQ, hung himself in Cell 17 through a pre-existing, manufactured hole in the metal bottom of the top bunk. It appears that Dylan's suicide hanging was accomplished in the same cell by the means of the same prohibited defect that facilitated inmate Boyce's hanging death because of the failure of the COUNTY OF MARIN, SHERIFF SCARDINA, THE MARIN COUNTY SHERIFF'S OFFICE and Does to reasonably review, investigate and report the previous incidents as required under 15 CCR 1046(a) and 15 CCR 1030 and Marin County Custody Manual section 512.5; and thereafter failed to take reasonable available measures to repair, correct or abate the dangerous tie-off conditions in the jail in spite of the obvious risk of death that they presented to incarcerated persons.

39.  Despite their knowledge of the prior suicide death events described hereinabove and the dangerous conditions at the Marin County Jail, Defendants, and each of them, were deliberately indifferent to the safety and protection of inmates, particularly mentally ill and vulnerable inmates like DYLAN BAYLACQ. This indifference consisted of a failing to take reasonable, available measures to repair, correct or abate the known, patent tie-off risks in the design, construction, maintenance of cells at the Marin County Jail, including but not limited to Special Housing Pod-Cell 17 and the furnishings therein, in violation of Title 24 section 1231.3.5 of the California Code of Regulations; persistently, indiscriminately and unreasonably providing special management incarcerated persons, including Dylan Baylacq, with nylon mesh laundry bags in spite of the obvious risk that such items could be used as ligature for suicide by hanging and suffocation; failing to reasonably adjust the frequency of the safety checks in spite of the observed numerous scars, sores, cigarette burns, wounds and other indicia of self-harm that DYLAN visibly bore; and, failing to provide minimally competent mental health care including the adequate investigation and charting of DYLAN'S social, medical and psychiatric history; not providing him with prescribed medication, upgrading Decedent's mental health and custody classification without a reasonable basis for doing so; and, failing to make periodic safety checks

at reasonable intervals as set forth in the Marin County Custody Manual 504.3. The foregoing acts and omissions were substantial factors in causing DYLAN BAYLACQ's death on October 1, 2023.

40.     After his booking at the Jail on August 27, 2023, DYLAN was classified as a "mental health four" which required frequent observation and safety checks. Thereafter, Defendants, and each of them, failed to take reasonable care to provide appropriate supervision and/or mental health care to DYLAN. Defendants, and each of them, as per their custom and practice, failed to use reasonable effort to check Decedent's psychiatric history and provide adequate care, observation and supervision as set forth above. Defendants also failed to take reasonable steps to provide a psychiatric diagnosis and/or provide his previously prescribed psychiatric medication to address DYLAN's symptoms. On or after September 13, 2023, DYLAN'S father, ANTHONY BAYLACQ reported to the Marin County Probation Department that he was worried that his son could attempt to kill himself.

41.     Despite his presentation and history, on September 28, 2023, DYLAN was "bumped down" to mental health three and thereafter remained as the sole occupant in Special Housing Pod-Cell 17. Despite his change in classification, DYLAN remained administratively segregated and was a special management inmate.

42.     As set forth above, Defendants, and each of them, knew or should have known, that Special Housing Pod-Cell 17 was unsafe and did not comply with the requirements of Title 24 of the California Code of Regulations. Special Housing Pod-Cell 17 was furnished with an upper bunk that had pre-existing, manufactured hole(s) in the platform that provided a tie-off point for hanging/strangulation suicide in violation of Title 24. Despite their knowledge of DYLAN's unstable mental health and the dangerous condition of his Cell 17, Defendants provided Decedent with a nylon mesh laundry bag which increased the foreseeability of the risk of self-strangulation by hanging. Despite knowing of these dangerous conditions, Defendants, and each of them, failed to repair, correct or abate the defects or withhold the nylon mesh ligature. Moreover, Defendants, and each of them, failed to conduct timely, periodic safety checks at reasonable intervals or provide reasonable supervision while DYLAN was housed in Special Housing Pod-Cell 17, in violation of Title 15 as set forth above.

43.    In doing the foregoing acts and omissions, Defendants, and each of them, also failed to take reasonable steps to provide a safe custodial facility including, but not limited to: failure to reasonably supervise the provision of items that could be used as a ligature; assigning Decedent to a double occupancy cell that Defendants knew contained an elevated bunk bed that had pre-existing manufactured holes that did not meet Title 24 regulatory standards which require a solid bottom; that such defects posed a risk of serious bodily injury or death by providing a "tie-off" point for a strangulation ligature and had been used in previous suicide death events at the jail. Defendants also knew, or should have known, that the provision of nylon mesh laundry bags to vulnerable inmates like Decedent could provide a hanging ligature in combination with the defective furnishings in the cell. Despite their knowledge of such dangers, Defendants, and each of them, provided the means and the method by which DYLAN BAYLACQ took his own life by hanging on October 1, 2023.

44.    Defendants COUNTY, MCSO, SCARDINA, HHS and Does 1 through 200, acted with deliberate indifference, gross negligence, and reckless disregard to the safety, security, protection and constitutional and statutory rights of DYLAN BAYLACQ and all persons similarly situated, and maintained, enforced, tolerated, permitted, acquiesced in, and applied policies or practice of constituting deliberate indifference, including but not limited to:

a.    Failing to provide adequate and competent mental health care, medication, screening, observation and supervision;

b.    Hiring, retaining and assigning deputies to the jail without proper training or supervision with deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates who exhibit vulnerabilities due to medical, mental health and disabilities;

c.    Classifying and reclassifying inmates, arrestees, and detainees to housing security levels without conducting reasonable, adequate and consistent review of their medical and/or psychiatric history and records;

d.    Failing to make reasonable and necessary safety checks in violation of Title 15 and/or the Marin Custody Manual 504.3;

e.    Failing to take minimally adequate security measures to protect inmates, arrestees and detainees from unnecessary harm, including self-harm, including but not limited to, conducting safety checks at reasonable and necessary intervals, installation of video security cameras and/or audio microphones or other devices capable of monitoring special management inmate behavior and attempts at self-harm, and/or training deputies to monitor self-harm;

f.    Being deliberately indifferent to the above described occurrences of hanging suicide deaths related to ligature point hazards and tie-off dangers at the Marin County Jail, including Special Housing Cell 17, where Dylan was confined 23 hours per day. A reasonable correctional official under the circumstances would have, and should have, appreciated the substantial risk of serious  harm, or death, that these conditions posed and investigated, reported and abated them in a timely manner—making the consequences of the Defendants' failure to abate the dangerous conditions and/or take available, protective measures, obvious.

g.    Being deliberately indifferent to the substantial risk of serious bodily injury or death by the persistent, longstanding custom, practice and policy of  indiscriminately providing nylon mesh laundry bags to special management inmates like Decedent, thereby creating an obvious risk that it would be used as a ligature in light of the known, longstanding tie-off hazards.

45.    Plaintiff is informed and believes, and based on such information and belief, alleges that Defendants COUNTY, MCSO, SCARDINA and HHS ordered, authorized, acquiesced in, tolerated, or permitted other Defendants to engage in the unlawful and unconstitutional actions, omissions, practices, and customs set forth in the preceding paragraphs. Defendants' conduct as alleged herein constitutes a persistent pattern of constitutional violations based either on a deliberate plan by Defendants, or in Defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security and constitutional rights of DYLAN BAYLACQ, and by extension to Plaintiff ANGELINA PAPIA.

46.    Based upon the foregoing facts and circumstances, Defendants, and each of them, knew, or should have known, that their failure to provide medical and mental health care to detainees, arrestees and inmates was inadequate, ineffective and had resulted in previous instances of preventable harm and death to inmates at the Marin County Jail.

47.    Based upon the foregoing facts and circumstances, Defendants, and each of them,

knew, or should have known, that the design, construction, maintenance, repair and operation of Special Housing Pod-Cell 17 were deficient, unsafe and did not meet current or reasonable standards for design, construction, maintenance, repair and operation, all of which created a dangerous condition that posed a foreseeable risk of serious bodily injury or death to incarcerated individuals and failed to take reasonable available measures to repair, correct or abate the risks, even though reasonable jail officials would have, and should have, appreciated the high degree of risk involved.

48.    As a direct and proximate result of the acts and omissions of Defendants and each of them, on October 1, 2023, between 1:26 a.m. and 2:25 a.m., DYLAN BAYLACQ hung himself to death in Special Housing Pod-Cell 17 at the Marin County Jail. DYLAN hanged himself by knotting the nylon mesh laundry bag provided to him by Defendants and suspending it from the open and obvious pre-manufactured hole in the bottom of the upper bunk bed in Cell 17. On or after 2:25 a.m., the Marin Sheriff's Deputy assigned to do safety checks observed DYLAN hanging by his neck from the upper bunk. Efforts to resuscitate DYLAN failed, and he was pronounced deceased at the scene of the incident.

## VI.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Failure to protect from Harm, Deliberate Indifference to safety hazards, Violation of the Fourteenth Amendment to the**

**United States Constitution (42 U.S.C. §1983)**

**As against Defendants County of Marin, Marin County Sheriff's Office,**

**County of Marin, Sheriff Jamie Scardina, Department of Health and**

**Human Services, and Does 1 to 200**

49.    Plaintiff ANGELINA PAPIA realleges and incorporates by reference as though fully set forth herein, all prior paragraphs of this Complaint.

50.    By the actions and omissions described above, Defendants COUNTY, MCSO, SCARDINA, HHS and Does 1 to 200, which included the custodial and mental health staff at the MCJ, acting under color of state law in their individual capacities, deprived DYLAN BAYLACQ, and by extension, ANGELINA PAPIA, of the right to have his safety and life protected while in the custody of the COUNTY, MCSO, SCARDINA, HHS, as secured by the Fourteenth

Amendment, by subjecting him to a deprivation of these rights to be protected, proximately causing his suicide death by hanging.

51.     "When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being". *DeShaney v. Winnebago City Department of Social Services*, 489 U.S. 189, 199-200 (1989). Pursuant to 42 U.S.C. §1983, the estate of a deceased inmate can bring federal claims, on behalf of the decedent, for violations of the decedent's Constitutional rights. A municipal entity may be liable for an in-custody suicide if it is found that the entity's policies, or lack thereof, caused a violation of the inmate's Constitutional rights. (*City of Canton v. Harris*) (1989) 489 U.S. 378.  "Jail managers who decided to take no precautions against the possibility of inmate suicide –have no policy, for example, no suicide-watch option – would be guilty of deliberate indifference..." (*Boncher v. Brown County*) (8th Cir. 2001) 274 F.3d 484, 486. Indeed, detainees in jails and prisons are "restricted in their ability to fend for themselves" and are, therefore, far more vulnerable than the general population. See *Hare v. City of Corinth,* 74 F.3d 633, 639 (5th Circuit 1996). Custodial staff, including deputies, lieutenants, sergeants and correctional officers are not permitted to "bury their heads in the sand" and ignore these obvious risks to the inmate populations that they have an affirmative duty to protect. See *Walton v. Dawson*, 752, F. 3d 1109, 1119 (8th Cir. 2014).

52.     In doing the acts complained of herein, Defendants COUNTY, MCSO, SCARDINA, HHS and Does 1 to 200, which included the custodial and mental health staff at the MCJ, knew that DYLAN BAYLACQ was at substantial risk of self-harm due to the lack of adequate mental health care; lack of reasonable safety checks; lack of timely observation by visual confirmation or video surveillance; defective construction, maintenance and repair of Special Housing Pod-Cell 17 including, but not limited to, the known risk presented by the pre-existing holes in the upper bunk which provided a tie-off point for self-strangulation by hanging; indiscriminate provision of a nylon mesh laundry bag which could be used as a ligature; failure to take minimal steps to investigate DYLAN's recent history of suicidality and self-harm, lack of impulse control and grave disability; failure to provide medication prescribed to Decedent to address his mental illness and, failure to provide adequate supervision.

53.     At the time of DYLAN'S death, the COUNTY, MCSO, SCARDINA, HHS and Does

1 to 200 made the foregoing intentional decisions with respect to the conditions under which Decedent was confined. Those conditions put Decedent at substantial risk of suffering serious harm; and the Defendants did not take reasonable available measures to repair, correct or abate these risks, even though a reasonable jail official in the circumstances would have appreciated the high degree of risk involved–making the consequences of the defendants' conduct obvious; and, by not taking such measures, the Defendants caused Plaintiff's death. See *Castro v. County of Los Angeles* 833 F.3d 1060 (9th Cir. 2016).

54.    By the facts, circumstances, actions and omissions described hereinabove, Defendants, and each of them violated 42 U.S.C. §1983, failed to protect DYLAN BAYLACQ, and by extension Plaintiff ANGELINA PAPIA, from known risks of serious bodily injury or death as well as one's liberty in bodily integrity, as secured by the Fourteenth Amendment.

55.    The listed Defendants' failure to intervene, prevent, eliminate, or stop the constitutional violations by others, when Defendants were able to so intervene when such violations were occurring, also renders such Defendants' liable for these violations.

56.    Defendants subjected DYLAN to their wrongful conduct, depriving him of the rights set forth above, knowingly and with conscious disregard for his rights and safety.

57.    As a proximate cause of the foregoing acts and/or omissions, DYLAN died on October 1, 2023, by hanging himself from the known, open and obvious tie-off point on the upper bunk in Special Housing Pod-Cell 17 with a ligature consisting of the nylon mesh laundry bag provided to him by the Defendants. Plaintiff ANGELINA PAPIA is therefore entitled to general and compensatory damages in an amount to be proven at trial.

58.    In committing the acts alleged hereinabove, Defendant SCARDINA, and Does 1-200, and each of them, were guilty of a wanton and reckless disregard for the rights, safety and well-being of DYLAN BAYLACQ, and by extension, Plaintiff ANGELINA PAPIA. Plaintiff is therefore entitled to punitive damages and penalties allowable under 42 U.S.C. §1983, California Code of Civil Procedure §377.20 and other state and federal law against the individual Defendants. No punitive damages are sought directly against Defendant COUNTY, MCSO, and/or HHS.

59.    Plaintiff is also entitled to reasonable attorney's fees under 42 U.S.C. §1988 and other applicable California codes and laws.

**SECOND CLAIM FOR RELIEF**

**Deliberate Indifference to Serious Medical and Mental Health Needs,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. §1983) As against Defendants County of Marin,**

**Marin County Sheriff's Office, County of Marin Department of**

**Health and Human Services, Sheriff Jamie Scardina and Does 1 through 200**

60.    Plaintiff ANGELINA PAPIA, realleges and incorporates the foregoing paragraphs as if set forth herein.

61.    Defendants COUNTY OF MARIN, MCSO, SCARDINA, HHS and Does 1 through 200, which included the custodial and mental health staff at the Marin County Jail, were on notice that their deficient customs, practices and policies alleged herein created a substantial risk of serious harm, including inmate suicide and self-harm, to vulnerable inmates like DYLAN BAYLACQ.

62.    Each Defendant could have, and should have, taken action to prevent unnecessary harm to DYLAN and failed to do so.

63.    By its persistent, customs, policies practices and procedures described hereinabove, the Defendants, and each of them, placed DYLAN BAYLACQ at a substantial risk of suffering serious harm from the failure to provide adequate mental health care services and, failing take reasonable available measure to abate the risks that the dangerous and defective condition in Special Housing Pod-Cell 17; and by the indiscriminate provision of items suitable for use as a ligature; and, the failure to conduct required and/or reasonable and timely safety checks.

64.    Defendants knew, or should have known, that the 60 minute safety check interval used for the administratively segregated Mental Health 4 and Mental Health 3 inmates, including DYLAN, placed in the Special Housing Pod-Cell 17 was inadequate and created a substantial risk of serious bodily injury or death.

65.    Defendants failed to correct their customs, practices and policies despite knowledge of the aforesaid lethal consequences thereof, evidence deliberate indifference to the inmates, arrestees and detainees in their custody and care.

66.    The Defendants also knew or should have known that the re-classification of DYLAN BAYLACQ as level three from level four, placing him alone in a cell designed for two occupants, failure to conduct safety checks at reasonable intervals, foreknowledge of the dangerous condition of the upper bunk bed and indiscriminate provision of ligature material placed him at a substantial risk of serious bodily injury, self-harm and suicide.

67.    The foregoing acts and omissions by Defendants constitute deliberate indifference to the substantial risk of harm to DYLAN BAYLACQ, and by extension to Plaintiff ANGELINA PAPIA.

68.    As a proximate cause of the foregoing acts and/or omissions, DYLAN BAYLACQ died on October 1, 2023 by hanging himself from the above-described tie-off point on the upper bunk in Special Housing Pod-Cell 17 with a ligature consisting of the nylon laundry bag provided by said Defendants. Plaintiff ANGELINA PAPIA is therefore entitled to general and compensatory damages in an amount to be proven at trial.

69.    In committing the acts alleged hereinabove, Defendants, and each of them, acted were guilty of a wanton and reckless disregard for the rights, safety and well-being of DYLAN BAYLACQ, and by extension, Plaintiff ANGELINA PAPIA. Plaintiff is therefore entitled to punitive damages and penalties allowable under 42 U.S.C. §1983, California Code of Civil Procedure §377.20, and other state and federal law, against the individual Defendants. No punitive damages are sought directly against Defendant COUNTY, MCSO, and/or HHS.

70.    Plaintiff is also entitled to reasonable attorney's fees under 42 U.S.C. §1988 and other applicable California codes and laws.

### THIRD CLAIM FOR RELIEF

**Municipal Liability for Unconstitutional Policies, Procedures,**

**Practices and Customs (42 U.S.C. §1983)**

**As Against Defendants County of Marin, Marin County Sheriff's Office,**

**County of Marin Department of Health and Human Services**

**and Does 1 through 200**

71.    Plaintiff ANGELINA PAPIA, realleges and incorporates the foregoing paragraphs as if set forth herein.

72.    On and before October 1, 2023, and prior to DYLAN BAYLACQ's suicide death at the Marin County Jail, Defendants COUNTY, MCSO, SCARDINA and HHS and Does 1 through 200, had persistent and longstanding custom, practices and policies which failed to protect incarcerated individuals from the known dangerous conditions and practices described hereinabove. Such practices, customs and policies created a substantial risk of harm to the  health and safety of incarcerated individuals as set forth in the paragraphs above.

73.    Defendants COUNTY, SCARDINA, MCSO, and HHS, acting with deliberate indifference to the rights and liberties of incarcerated individuals, including DYLAN BAYLACQ, maintained, ratified, enforced and applied the faulty and inadequate customs, practices and policies described herein above with full knowledge of the substantial risks to the safety and health of inmates at the Marin County Jail. Further, the Defendants and each of them, failed to take reasonable, available measures to abate these risks even though a reasonable official would have appreciated the high degree of risk involved in not doing so.

74.    By reason of the aforementioned customs, practices and policies,  DYLAN BAYLACQ was denied adequate mental health care, observation and supervision, and provided with the means and the method to impulsively hang himself from a tie-off point on the defective, substandard upper bunk in Special Housing Pod-Cell 17 with the nylon mesh laundry bag provided by said Defendants.

75.    Defendants, COUNTY, MCSO, HHS and SHERIFF SCARDINA, with various other officials, whether named or unnamed, had either actual knowledge of the dangerous conditions, policies, practices, and customs as alleged in the paragraphs above. Despite having been informed of the dangerous conditions, customs practices and policies, the Defendants, and each of them, condoned, tolerated and through actions and inactions thereby ratified such customs and practices. In so acting, the Defendants, and each of them, acted with deliberate indifference to the substantial risk of harm and other consequences of these policies with respect to the constitutional rights of DYLAN BAYLACQ, and by extension to Plaintiff ANGELINA PAPIA.

76.    The foregoing conditions, policies, practices and customs implemented, ratified and condoned by the Defendants were substantial factors in causing DYLAN's suicide hanging on October 1, 2023. These same customs, practices and policies were also substantial factors in causing previous, avoidable inmate deaths at the Marin County Jail. Defendants, and each of them, failed to protect DYLAN BAYLACQ by not conducting safety checks at reasonable intervals, not using reasonable efforts to obtain his clinical history, providing him with a nylon mesh laundry bag that could be used as a ligature, failing to use reasonable professionally trained staff to reclassify him from Mental Health 4 to Mental Health 3 status, and by placing him alone in a double occupancy cell which was known to have dangerous and defective furnishings including tie-off points for suicide by hanging and self-strangulation. The Defendants' persistent customs, policies, practices, actions and omissions were contrary to generally accepted standards of classification, observation, supervision, maintenance and repair practices and were substantial factors in causing DYLAN BAYLACQ'S death.

77.    Defendants, and each of them, including Does 1 through 200, each individually knew, or should have known, that their peers and/or subordinates were violating regulations, law and standards pertaining to the classification, treatment, supervision and housing of inmates including but limited to their mental health status, lack of safety checks at reasonable intervals, dangerous conditions of the cells at the jail, failing to undertake reasonable investigation of the conditions involved in previous suicide death events at the Marin County Jail, failure to take reasonable measures to address dangerous conditions at the jail, and indiscriminate provision of nylon mesh bags which present a patent risk of ligatures a ligature; and, knew or should have known that their persistent course of conduct would deprive DYLAN BAYLACQ and by extension, Plaintiff ANGELINA PAPIA, of his constitutional rights to, inter alia, life and liberty, and each defendant failed to act to prevent his subordinate from engaging in such conduct.

### FOURTH CLAIM FOR RELIEF

**Supervisory Liability for Unconstitutional**

**Policies, Procedures, Practices and Customs (42 U.S.C. §1983)**

**As Against Defendants Jamie Scardina and Does 1 through 200**

78.    Plaintiff ANGELINA PAPIA realleges and incorporates the foregoing paragraphs as if set forth herein.

79.    As supervisors, Defendants COUNTY, MCSO, SCARDINA, and Does 1 through 200 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights of DYLAN BAYLACQ, and by extension to Plaintiff ANGELINA PAPIA. Each of these supervising Defendants either directed his or her subordinates in conduct that violated DYLAN's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew would present substantial risk of harm to Decedent, and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequences of a known or obvious hiring, training or supervisory deficiency that he or she must have and in fact did cause the violation of DYLAN BAYLACQ's rights, and by extension, the rights of Plaintiff ANGELINA PAPIA. See Ninth Circuit Model Civil Jury Instruction 9.4.

80.    Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of DYLAN BAYLACQ's rights, and by extension the rights of Plaintiff herein.

81.    On or before October 1, 2023, Defendants' COUNTY, MCSO, SCARDINA, HHS and Does 1 through 200 were aware of the above described longstanding and persistent customs, practices and policies at the Marin County Jail, including but not limited to the dangerous and non-conforming condition of Special Housing Pod-Cell 17 and other cells at the Marin County Jail, failing to protect incarcerated individuals from the substantial risks caused by those conditions, failing to take reasonable available measures to abate the dangerous conditions in spite of the obvious risk of harm that failing to do so would cause; failing to conduct safety checks within reasonable intervals, providing ligatures to special management inmates, and failing to use reasonable efforts to obtain the medical history of inmates at the Marin County Jail. Based upon the history of previous hanging deaths at the Marin County Jail and the notification from the Bureau of State and Community Corrections in regard to the numerous tie-off points existing at the Jail, Defendants, and each of them, knew that their customs, practices and policies would deprive the Decedent and Plaintiff of their constitutional rights to, inter alia, life and liberty, and each Defendant failed to prevent his subordinate from engaging in such conduct.

82.    Defendant SCARDINA is being sued in his individual and personal capacity. Defendant SCARDINA has direct command responsibility for the maintenance and supervision of

the Marin County Jail and had direct personal knowledge of the dangerous conditions at the jail and of his subordinates' ongoing constitutional violations, and deliberate indifference to the safety and protection of inmates at the Marin County Jail. Despite this knowledge, SCARDINA failed to take appropriate action to correct the dangerous and defective conditions, customs and practices described above, and acquiesced, condoned or ratified the longstanding persistent customs and habit of the failure to protect inmates by his subordinates. SCARDINA is also sued for his acquiescence in the constitutional deprivations as alleged herein and/or conduct that showed a reckless disregard or callous indifference to the rights of incarcerated individuals to be protected and safe while in MCSO custody. SCARDINA's actions and/or inaction set in motion a series of acts by others which he knew, or reasonably should have known, would cause others to inflict the constitutional violations alleged herein.

83.    Plaintiff is informed and believes and thereon alleges that prior to the death of DYLAN BAYLACQ on October 1, 2023, Defendants, COUNTY, MCSO, SCARDINA, and HHS knew or reasonably should have known that custodial staff at the MCJ and Does 1 - 200, in the course and scope of their employment, were deliberately indifferent to the safety and protection of inmates and knowingly maintained, enforced and applied custom and practices of:

a.    Ratifying negligent and wrongful conduct by custodial and mental health staff which resulted in serious injury and death to inmates at the MCJ by failing to implement corrective action to prevent repetition of wrongful conduct;

b.    Failing to discipline, investigate and take corrective action against custodial staff and mental health staff for misconduct, demonstrating grave deliberate indifference to the protection of mentally ill, vulnerable inmates;

c.    Inadequately hiring, supervising, training, controlling, assigning and disciplining custodial and mental health staff; and

d.    Failing to repair or otherwise take reasonable, available measures to investigate, repair, correct or abate known dangerous and defective hazards in the cells in the Special Housing Pod despite knowledge of the foreseeable risk of serious bodily injury or death they created.

84.    By reason of the aforementioned persistent, longstanding customs, practices and policies acts and omissions, DYLAN was able to hang himself to death while in custody, and

Plaintiff suffered the injuries, damages and loss as set forth herein. Accordingly, Defendants COUNTY, MCSO, SCARDINA and HHS are liable to Plaintiff ANGELINA PAPIA for compensatory damages pursuant to 42 U.S.C. §1983, and Defendant SCARDINA is liable to Plaintiff for exemplary damages pursuant to 42 U.S.C. §1983.

85.    Plaintiff is also entitled to reasonable costs and attorney's fees under 42 U.S.C. §1988 and other applicable California codes and laws.

### FIFTH CLAIM FOR RELIEF

**Interference with Familial Association, Violation of**

**Fourteenth Amendment to the United States Constitution (42 U.S.C. §1983)**

**As Against All Defendants**

86.    Plaintiff ANGELINA PAPIA hereby realleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint, including all of the allegations in the First, Second, Third and Fourth Claims for Relief.

87.    This claim is brought pursuant to 42 U.S.C. §1983 for violation of Plaintiff ANGELINA PAPIA's rights under the Fourteenth Amendment.

88.    Pursuant to the Fourteenth Amendment to the United States Constitution, all persons have the right to be free from unlawful state interference with their familial relations, and 42 U.S.C. §1983 provides a private right of action for conduct which violates this right.

89.    As a result of the above described, customs, practices, policies, acts and omissions of Defendants COUNTY, MCSO, SCARDINA, HHS and Does 1-200, and as a result of the unconstitutional practices of Defendants COUNTY, MCSO, SCARDINA, HHS, and Does 1-200, DYLAN BAYLACQ died on October 1, 2023. His untimely, preventable death permanently and irreparably destroyed the relationship between Plaintiff ANGELINA PAPIA and her son, thus violating Plaintiff's rights to familial integrity and association and her right to be free of governmental interference in their relationship. As a result, Plaintiff ANGELINA PAPIA suffered the violation of her civil rights and related consequential damages. These acts and omissions have caused a significant and meaningful infringement on her ability to maintain an emotional bond as protected by the Fourteenth Amendment.

90.    In committing the acts alleged above, Defendant SCARDINA and Does 1-200 acted

with a wanton and reckless disregard for the rights, safety and emotional well-being of Decedent and Plaintiff ANGELINA PAPIA, and by reason thereof, Plaintiff is entitled to exemplary damages against the individual Defendants.

## SIXTH CLAIM FOR RELIEF

### Negligence

### As to DEFENDANT SCARDINA and Does 1-200

91.    Plaintiff, ANGELINA PAPIA, realleges and incorporates the foregoing as if set forth herein.

92.    At all material times, Defendants COUNTY, MCSO, SCARDINA, HHS and Does 1-200 owed Decedent DYLAN BAYLACQ and Plaintiff ANGELINA PAPIA the duty to act with reasonable care in the execution, protection and enforcement of all right, law and legal obligations within the scope of their responsibilities.

93.    These general rules of reasonable care and due care owed to Decedent and to Plaintiff include but are not limited to:

        a.    To provide safe and appropriate custody conditions at the MCJ for DYLAN BAYLACQ, including but not limited to:

                1)    safe and reasonable design, construction, maintenance and repair of cells and the furnishings therein;

                2)    adequate and reasonable mental health services and medical care;

                3)    safe and reasonable inmate classification and supervision of incarcerated individuals;

                4)    conducting safety checks at reasonable intervals appropriate for the classification and special management needs of inmates;

                5)    regulating the safe provision of ligature materials to appropriate inmates.

                6)    To obey federal law, Supreme Court and Ninth Circuit precedent, and court orders for the care and safety of inmates, such as DYLAN BAYLACQ;

                7)    To comply with generally accepted prison, custodial, institutional, law

enforcement and other inmate-safety-ensuring standards and procedures that are reasonable and appropriate for Decedent's status and history as a MCJ inmate with acute mental health needs;

8)    To refrain from abusing their authority granted to them by law; and

9)    To refrain from violating Plaintiff's rights guaranteed by the United States and California Constitutions, as set forth above and as otherwise protected by law.

94.    By the acts and omissions set forth more fully in the paragraphs above, Defendants acted negligently and breached their duty of care to DYLAN BAYLACQ, which foreseeably resulted in the suffering of damages by Plaintiff ANGELINA PAPIA.

95.    Defendants, through their acts and omissions, breached the aforementioned duties owed to DYLAN, and such breaches led to his hanging death on or about October 1, 2023.

96.    On information and belief, Defendants, and each of them, including custodial and mental health staff at the MCJ, acted with deliberate indifference and/or negligence by failing to maintain the subject premises in safe condition, negligently providing a nylon ligature to Decedent in spite of his known history of self -harm and lack of impulse control, failure to provide acceptable level of mental health care and observation, and conduct proper and timely safety checks.

97.    Defendants, and each of them, also had a duty to hire supervise, train and retain employees and/or agents so that the employees and/or agents refrained from the conduct or omissions alleged herein.

98.    Defendants, and each of them, breached these duties, causing the conduct alleged herein. Such breaches constituted negligent hiring, supervision, training and retention under the laws of the State of California.

99.    As a direct and proximate result of the failure of Defendants and each of them to carry out their duty to hire, supervise, train and retain employees and/or agents so that the employees and/or agents refrained from the conduct and/or omissions alleged herein, Plaintiff suffered injuries and damages as alleged herein.

100.    At all mentioned herein, Defendants Does 1-200 were acting in the course and scope of their employment with Defendants COUNTY OF MARIN, MCSO, and HHS, which were and

are vicariously liable under the doctrine of *respondeat superior* pursuant to California Government Code §815.2.

101.  As a proximate result of the negligence of Defendants Does 1 through 200, Plaintiff sustained injuries and damages, against each listed Defendant in this Count. Plaintiff also seeks exemplary damages against such individual Defendants in their individual capacities. Plaintiff does not seek exemplary damages against the COUNTY, MCSO, HHS.

## SEVENTH CLAIM FOR RELIEF

### State of California Civil Rights Violations

### (California Civil Code§52.1 (b)) As Against All Defendants

102.  Plaintiff ANGELINA PAPIA, realleges and incorporates the foregoing paragraphs as if set forth herein.

103.  By their acts and omissions, customs, and policies, Defendants, and each of them, which included custodial and mental health staff at the MCJ, acting in concert as described above, violated Plaintiff's rights under California Civil Code§52.1 and the clearly established rights under the United States Constitution and California Constitution and law:

a.    Decedent DYLAN BAYLACQ's, and by extension Plaintiff's, right to be free from deliberate indifference to DYLAN's safety needs while in custody at the MCJ as an inmate, as secured by the Fourteenth Amendment to the United States Constitution and the California Constitution, Article 1,§7;

b.    DYLAN's right, and by extension Plaintiff's right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy as secured by the California Constitution, Article 1, §1; and,

c.    DYLAN's right, and by extension, Plaintiff's right to protection from bodily harm, insult and secured by California Civil Code §43.

104.  As a direct and proximate result of Defendants' violations of California Civil Code §52.1 and of Plaintiff's rights under the United States and California Constitutions and law, Plaintiff sustained injuries and damages, and against each Defendant named in this cause of action is entitled to the relief set forth above and exemplary damages against all individual Defendants,

including all damages and penalties allowed by California Civil Code §§52 and  52.1 and California law, three times actual damages, and attorney's fees. No punitive damages are sought against the public entities named herein.

## EIGHTH CLAIM FOR RELIEF

### Wrongful Death (California Code of Civil Procedure §377.60)

### As Against All Defendants

105.  Plaintiff ANGELINA PAPIA, realleges and incorporates the foregoing paragraphs as if set forth herein.

106.  Decedent DYLAN BAYLACQ died without issue and Plaintiff ANGELINA PAPIA is statutorily entitled to pursue this claim for wrongful death as his mother pursuant to California Code of Civil Procedure §377.60 (a).

107.  ANTHONY BAYLACQ is DYLAN BAYLACQ's father and is named herein as a Defendant pursuant to California Code of Civil Procedure 382.

108.  The foregoing negligent, unlawful and unconstitutional acts, omissions, policies and procedures of Defendants, and each of them, proximately caused the wrongful death of DYLAN BAYLACQ on October 1, 2023.

109.  As a proximate result of the Defendants acts and omissions which caused the death of DYLAN BAYLACQ, ANGELINA PAPIA has sustained pecuniary loss resulting from the loss of society, comfort, attentions, services and support of Decedent.

110.  As a further proximate result of the wrongful death of DYLAN BAYLACQ, Plaintiff has incurred funeral and burial expenses according to proof.

## PRAYER

WHEREFORE, Plaintiff prays for relief as follows:

1.    For compensatory damages and other economic damages according to proof, which is fair, just and reasonable.

2.    For general damages according to proof;

3.   For an award of exemplary or punitive damages under federal law and California law in an amount according to proof and in an amount which is fair, just and reasonable against the individual Defendants, except the municipal Defendants;

4.   For an award of attorney's fees and costs as permitted by law;

5.   For injunctive relief designed to remedy the unlawful practices alleged herein; and,

6.   For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby requests a jury trial on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Dated:   March 31, 2025                 LAW OFFICE OF LAWRENCE BRAGMAN


                                        By:  /S/ LAWRENCE BRAGMAN

                                        Lawrence Bragman
                                        Attorney for Plaintiff ANGELINA PAPIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28